**In re IKON OFFICE SOLUTIONS, INC. Securities Litigation, (Whetman V. Ikon).**

**Nos. MDL 1318, 00–87.**

United States District Court, E.D. Pennsylvania, Philadelphia Division.

March 13, 2000.

Forese, Defendants, Kurt E. Dinkelacker, Michael J. Dillon, Movants.

Lawrence T. Hoyle, Hoyle, Morris and Kerr, Philadelphia, PA, Arlene Fickler, Hoyle, Morris and Kerr, LLP, Philadelphia, PA, Michael T. Starczewski, Hoyle, Morris and Kerr, LLP, Philadelphia, PA, for John E. Stuart, Defendant.

Jacob A. Goldberg, Berger and Montague, P.C., Philadelphia, PA, Lynn Lincoln Sarko, Keller Rohrback, Seattle, WA, for Philadelphia Group, Movant.

Rory O. Millson, Miriam Hechler Baer, Andrew G. Gordon, Cravath, Swaine and Moore, Worldwide Plaza, New York, NY, for William F. Drake, Movant.

Marc Gary, Mayer, Brown & Platt, Washington, DC, Edward M. Posner, Drinker Biddle & Reath LLP, Philadelphia, PA, Renee Narducci Battisti, Drinker Biddle & Reath LLP, Philadelphia, PA, Gary A. Orseck, Kathryn Schaefer, Lawrence S. Robbins, Mayer, Brown & Platt, Washington, DC, Lily Fu Swenson, Mayer, Brown & Platt, Washington, DC, for Ernst & Young LLP, Movant.

Ron Kilgard, Gary A. Gotto, Dalton, Gotto, Sampson & Kilgard, Phoenix, AZ, Roger H. Hoole, Hoole & King, Salt Lake City, UT, for Julia Whetman, Judy Peterson, Movants.

Andrew B. Clauss, Cozen and O'Connor, Philadelphia, PA, Charles J. Glasser, JR., Willkie, Farr & Gallagher, New York, NY, Richard L. Klein, Willkie, Farr & Gallagher, New York, NJ, for Bloomberg News, movant.

Deborah R. Gross, Law Offices of Bernard M. Gross, Philadelphia, PA, Robert P. Frutkin, Savett, Frutkin, Podell and Ryan, P.C., Philadelphia, PA, Lynn Lincoln Sarko, Keller Rohrback, Seattle, WA, Britt L. Tinglum, Keller, Rohrback, LLP, Seattle, WA, Jerome M. Congress, Milberg, Weiss, Bershad, Hynes & Lerach LLP, New York, NY, Douglas Risen, Berger & Montague, Philadelphia, PA, Patrick Slyne, Stull Stull & Brody, New York, NY, for Philip Cohen, Sandra Cohen, Plaintiffs.

Todd S. Collins, Berger & Montague, P.C., Philadelphia, PA, Jules Brody, Aaron L. Brody, Stull, Stull & Brody, New York, NY, Jared Specthrie, Samuel H. Rudman, Milberg, Weiss, Bershad, Hynes & Lerach, New York, NY, Robert P. Frutkin, Savett, Frutkin, Podell and Ryan, P.C., Philadelphia, PA, Lynn Lincoln Sarko, Keller Rohrback, Seattle, WA, Britt L. Tinglum, Keller, Rohrback, LLP, Seattle, WA, Jerome M. Congress, Milberg, Weiss, Bershad, Hynes & Lerach LLP, New York, NY, Lee A. Weiss, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, New York, NY, Juli E. Farris, Keller Rohrback, Seattle, WA, for Randy Leach, Judy Leach, Oliver Scofield, Dan Watson, Frederick L. Goldfein, Stanley Knapp, Lawrence Porter, Gerard J. Galiger, Plaintiffs.

Thomas B. Roberts, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, Rory O. Millson, Alan J. Hruska, Thomas G. Rafferty, Cravath, Swaine & Moore, Worldwide Plaza, New York, NY, John G. Harkins, Jr., David J. Creagan, Harkins Cunningham, Philadephia, PA, Eleanor Morris Illoway, Harkins Cunningham, Philadelphia, PA, Gerald A. Ford, Cravath, Swaine and Moore, Worldwide Plaza, New York, NY, Miriam Hechler Baer, Andrew G. Gordon, Cravath, Swaine and Moore, Worldwide Plaza, New York, NY, for Ikon Office Solutions, Inc., James J.

## MEMORANDUM & ORDER

KATZ, Senior District Judge.

Before the court is plaintiffs' motion for certification of a class of plaintiffs who were participants or beneficiaries in the defendants' retirement savings plan. Because the court finds that the proposed class meets the requirements of Federal Rule of Civil Procedure 23 and that certifying the class at this time will facilitate the fair and efficient resolution of this matter, the motion will be granted.

## I. Background

The two named plaintiffs, Julia Whetman and Judy Peterson, are former Ikon employees who invested in their employer's retirement savings plan. They seek to litigate claims alleging breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 (ERISA) on a class-wide basis.[1] *See* 2d Am. & Supp. Compl. ¶¶ 182–203 (alleging violations of ERISA); *see also* 29 U.S.C. § 1104 (establishing fiduciary duty); 29 U.S.C. § 1132(a)(2), (3) (establishing cause of action).

In its memorandum and order addressing the motion to dismiss filed in this action, the court summarized the plans at issue. The plan was originally adopted by Ikon's predecessor, Alco Standard,[2] on January 1, 1975. Until October 1, 1995, it was a pure employee stock ownership plan (ESOP), in which all contributions were invested in employer stock. As of October 1, 1995, the plan was amended to include a "self-directed" component by which employees could direct their own contribution to any of several funds, one of which was an employer stock fund. Even after October 1, however, the employer's contribution was maintained as an ESOP, as these contributions went only into employer stock. *See* Mem. and Order of Mar. 1, 2000, at 13.

Plaintiffs[3] allege that Ikon and individual defendants breached their fiduciary duties in several ways.[4] Plaintiffs claim that the alleged fiduciaries acted improperly by investing the company's matching contribution solely in Ikon stock notwithstanding purported knowledge of Ikon's failing financial status, including knowledge of actual fraud perpetrated by the company. Similarly, plaintiffs claim that the alleged fiduciaries failed to inform plan participants of Ikon's financial difficulties and, in fact, made affirmatively inaccurate statements regarding the company's strength and the plan itself. According to plaintiffs, these breaches led to financial disaster for their retirement investments when Ikon's stock fell sharply following a $110 million charge to earnings taken on August 14, 1998, which was directly related to the alleged financial improprieties just mentioned.

The court has already certified a class in *In re Ikon Securities Litigation*, the securities action originally filed in Pennsylvania with which the Utah case was consolidated. On March 15, 1999, the parties stipulated to, and the court approved, a class consisting of

> All persons who purchased or otherwise acquired common stock and/or call options of Alco Standard Corp. and/or IKON Office Solutions, Inc. during the period from January 1, 1997 through and including August 13, 1998; or "when issued" common stock of Alco Standard Corp. during the period from December 9, 1996, through and including December 31, 1996; or convertible preferred stock of Alco Standard Corp. and/or IKON Office Solutions, Inc., during the period from December 16, 1996, through and including August 13, 1998. Excluded from the Class are defendants, the officers and directors of IKON, members of the immediate families of such officers and directors, and subsidiaries and affiliates of the defendants.

Order of March 15, 1999. Subsequently, the court preliminarily approved a settlement class consisting of

---

1. This motion for class certification was originally filed in the district of Utah in September 1999. The Utah court deferred ruling on that motion pending the decision of the Judicial Panel on Multi District Litigation (JPMDL) as to whether or not to consolidate pre-trial proceedings in this district. Following the JPMDL's Order of December 2, 1999, transferring the case to the Eastern District of Pennsylvania, the issue came before this court for consideration. The parties have extensively supplemented their original papers with memoranda, and the court held a hearing on this and other matters on February 25, 2000.

2. In 1997, Alco spun off one of its lines of business under the name Unisource and changed its own name to Ikon Office Solutions, Inc.

3. "Plaintiffs," for purposes of this order, means the ERISA plaintiffs.

4. Obviously, in this motion, the court makes no comment on whether the defendants actually were fiduciaries.

a. all persons who purchased or otherwise acquired common stock, convertible preferred stock, and/or call options of Alco Standard Corp. and/or IKON during the period from January 24, 1996 through and including August 13, 1998 other than the members of the Certified Class who do not timely exclude themselves from the Settlement Class; and

b. all persons who excluded themselves from the Certified Class but who, pursuant to the Settlement, request inclusion in the Settlement Class for the purpose of being able to participate in the Settlement.

Preliminary Approval Order of December 30, 1999, at 2. In the same order, the court also preliminarily approved a settlement for this Global Class. If the settlement is ultimately approved, putative class members who do not opt out of the settlement will "release and forever discharge" all "Settled Claims," defined to include claims in which "the injury alleged is that the Global Class member or a trust or other ERISA related entity of which the Global Class member is a beneficiary or participant was caused to acquire or did acquire, directly or indirectly, IKON Securities at wrongfully inflated prices during the Class Period." Notice of Pendency of Class Action ¶ 25 ("Terms of the Settlement"). A fairness hearing on this settlement is scheduled for April 11, 2000.

Although the original motion for certification of an ERISA class suggested that certification would be proper under any of the subsections of Rule 23(b), *see* Mot. for Class Cert. at 10–11, the plaintiffs now request class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(1) only. *See* Plf. Reply Mem. of Feb. 7, 2000, at 7, 10; Plf. Mem. of Mar. 7, 2000, at 1. Plaintiffs now propose the following class:

The ERISA Class consists of all participants and beneficiaries of the Alco Standard Corporation Retirement Savings Plan or the IKON Office Solutions, Inc. Retirement Savings Plan (collectively without distinction the "Plan") at any time after September 30, 1995, who suffered losses recognized under ERISA with respect to

investments in the Alco Stock Fund or IKON Stock Fund. If the settlement described in the Notice of Pendency of Class Action Proposed Settlement and hearing Thereon, dated January 14, 2000 (the Securities Litigation Notice) is approved, the losses suffered by members of the ERISA Class who are also members of the "Global Class" (as defined in the Securities Litigation Notice) and do not opt out of such Global Class shall exclude losses of ERISA Class members that are due to acquisitions, directly or indirectly, of "IKON Securities" at wrongfully inflated prices during the "Class Period" (as those terms are used in the Securities Litigation Notice).

Plf. Proposed Order, Mem. of Mar. 7, 2000 (Ex. 1).

Although the defendants originally contended that no ERISA class could be certified, discussion at the February 25, 2000 hearing on this subject demonstrated that the parties disagreed more on the nature of the class than on whether one ought to be certified. After an unsuccessful effort to reach consensus on the class definition, the defendants submitted the following proposed definition:

The ERISA Class consists of all participants and beneficiaries of the Alco Standard Corporation Retirement Savings Plan or the IKON Office Solutions, Inc. Retirement Plan (collectively without distinction the "Plan") at any time after September 30, 1995, and through August 13, 1998 who suffered losses, if any, compensable under ERISA with respect to shares of Alco Standard Corporation or IKON Office Solutions, Inc. stock acquired directly or indirectly for the account of a Plan participant during this period. If the settlement described in the Notice of Pendency of Class Action Proposed Settlement and Hearing Thereon, dated January 14, 2000 (the "Securities Litigation Notice["]) is approved, all claims based on shares of Alco Standard Corporation or IKON Office Solutions, Inc. stock acquired directly or indirectly for the account of a Plan participant during the "Global Class Period" (as that term is used in the Securities Litigation

Notice) shall be excluded from any claims made in this action.

Def. Correspondence of Mar. 7, 2000 (filed of record by Order of Mar. 9, 2000).

Although defendants raise other issues, they note correctly that the primary differences remaining between the parties are the length of the class period and whether or not the claims of individuals who merely held Ikon stock during the class period can properly be included in an ERISA class. The court will address these arguments in the context of the subsequent Rule 23 analysis.[5]

## II. Rule 23 Arguments

■ To obtain class certification, plaintiffs must show that they satisfy the four requirements of Rule 23(a) as well as those of Rule 23(b)(1). *See Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 613–16, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *see also Baby Neal v. Casey,* 43 F.3d 48, 55–56 (3d Cir. 1994) (noting that burden is on plaintiff to make showing). Doubts should be resolved in favor of approving class certification. *See Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.1985). Plaintiffs have no obligation to "prove" their case at this point, and the court's resolution of the class motion is limited to ascertaining whether the requirements of Rule 23(a) and (b) are met. *See, e.g., Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.").

At this point, the court will engage in analysis of a class period extending only from October 1, 1995, until August 13, 1998, as the questions raised by the lengthier class period suggested by plaintiffs will be addressed separately.

### A. Rule 23(a) Analysis

#### 1. Numerosity

■ To be maintained as a class action, the class must be so "numerous that joinder of all members is impracticable." Fed. R.Civ.P. 23(a)(1). Impracticality does not mean impossibility of joinder, and the court should make common sense assumptions regarding numerosity. *See, e.g., Moskowitz v. Lopp,* 128 F.R.D. 624, 628 (E.D.Pa.1989). Defendants do not challenge this point, and the plaintiffs allege that there were thousands of participants in the plan in any given year. Plaintiffs cannot provide more specific information because of the stay on discovery. The court agrees that joinder of claims in this case would be unfeasible, and the numerosity standard is easily met.

#### 2. Commonality and Typicality

■ Before certifying a class, the court must find that "there are questions of law and fact common to the class," Fed.R.Civ.P. 23(a)(2), and that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a)(3). Although commonality and typicality are distinct inquiries, they are closely related and tend to merge, as both "criteria seek to assure that the action can be practically and efficiently maintained and that the interests of the absentees will be fairly and adequately represented." *Baby*

---

5. In light of their correspondence of March 7, 2000, proposing a class definition, the court interprets defendants as having abandoned their suggestion that the court deny the motion for certification based on its overlap with the Global Class. *See* Def. Resp. Mem. of Jan. 20, 2000, at 7–8; Def. Reply Mem. of Feb. 7, 2000, at 5. The court agrees that the overlap issue may be addressed through the exclusionary language in either of the parties' proposed definitions. The Pennsylvania plaintiffs also agree with this resolution. *See* Pa. Plf. Resp. of Jan. 20, 2000, at 5 (noting need for carve-out to avoid double recovery).

Defendants also argued that there could be no class certification for any claims pertaining to the ESOP component of the plans because no fiduciary had any discretion at any time as to where the employer contribution could be directed. As defendants acknowledge, the court rejected this claim in its resolution of the motion to dismiss, noting that the Third Circuit's decision in *Moench v. Robertson,* 62 F.3d 553 (3d Cir. 1995), held that fiduciaries may, in some limited circumstances, be liable for breach of fiduciary duty even when governed by plan documents that establish an ESOP. *See* Mem. & Order of Mar. 1, 2000, at 16–18.

*Neal,* 43 F.3d at 56; *see also Hassine v. Jeffes,* 846 F.2d 169, 176–77 n. 4 (3d Cir.1988) (same). Neither requirement "mandates that all putative class members share identical claims" and "factual differences among the claims of the putative class members do not defeat certification." *Baby Neal,* 43 F.3d at 56 (citing *Hassine,* 846 F.2d at 169); *see also In re Prudential Ins. Co.,* 148 F.3d 283, 311 (3d Cir.1998).

 The commonality requirement is usually easily met, as it requires only that "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal,* 43 F.3d at 56. Class treatment is not precluded even if "individual facts and circumstances" become important in the case, *id.* at 57: bifurcation is always possible, *see id.,* as is division into subclasses. *See* Fed.R.Civ.P. 23(c). That is, the commonality inquiry under Rule 23(a) is much less stringent than the "predominance" of common questions requirement of Rule 23(b)(3). *See, e.g., In re Orthopedic Bone Screw Prod. Liab. Litig.,* 176 F.R.D. 158, 173–74 (E.D.Pa.1997). On this point and more generally, it is important to acknowledge that class certification is conditional until judgment is entered, and "the court may certify the class initially and then, if appropriate under all the circumstances, decertify the class after an adjudication of liability." *Feret v. Corestates Fin. Corp.,* Civ. A. No. 97–6759, 1998 WL 512933, at *7 (E.D.Pa. Aug.18, 1998). It is, in fact, the court's duty to reassess class certification decisions in light of the case's development. *See Barnes v. American Tobacco Co.,* 161 F.3d 127, 140 (3d Cir.1998).

 The typicality requirement asks "whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal,* 43 F.3d at 57; *see also In re Prudential,* 148 F.3d at 311 (same). Consequently, "[t]ypicality entails an inquiry whether the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Baby Neal,* 43 F.3d at 57–58 (citations, internal punctuation omitted). Usually, a plaintiff's claim is typical of a class if it challenges the same conduct as would the putative class. *See id.* at 57–58; *In Re Data Access Sys. Sec. Litig.,* 103 F.R.D. 130, 139 (3d Cir.1984). Even quite significant factual differences will not defeat typicality so long as the legal theory upon which plaintiffs seek redress is the same as those they seek to represent. *See In re Prudential,* 148 F.3d at 311; *Baby Neal,* 43 F.3d at 58.

### a. Defendants' Objections to Commonality

It is here that the defendants argue most strenuously that certification of plaintiffs' proposed class is inappropriate because of so-called "holder" claims. From the outset, plaintiffs have argued that any certified class must include the claims of those who acquired Alco or Ikon stock through the plans prior to any class period but who held that stock through the class period based on the representations of plan fiduciaries that this was a prudent investment. Defendants argue that a class containing such claims cannot meet Rule 23's commonality requirement. Particularly at the hearing, defense counsel emphasized the inappropriateness of a "status" based class, i.e., a class based only on participation in the plans. Defendants argue that holder claims, by their very nature, make damages too speculative: according to defendants, it is impossible to determine whether the plaintiffs would have avoided damages even if they had learned the truth about Ikon's financial information, because the decision as to whether to hold or transfer stock is profoundly individualized. Defendants also stress the differences in individual situations under the plans: for example, different individuals will have vested at different times and in different circumstances, and part of the plan was spun-off with Unisource on December 1, 1997, creating additional questions regarding causation and damages.

 The court concludes that the plaintiffs have met their burden of showing commonality, even if there may be individual

issues with respect to holder claims. Plaintiffs correctly stress the difference between a securities fraud claim and an ERISA claim. The unique duties and remedies provided for by the ERISA statute differentiate this class from a "generic" group of securities holders. In this context, the focus is on the nature of the alleged misrepresentation, the materiality of those misrepresentations, and, indeed more fundamentally, whether Ikon and the individual defendants even acted as fiduciaries. *See Feret,* 1998 WL 512933, at *8 (citing *In re Unisys Corp.,* 57 F.3d 1255, 1265–67 (3d Cir.1995)).[6] While the decisions as to whether to hold Ikon stock may ultimately be individualized, only one common issue of law or fact must exist to satisfy the commonality requirement of Rule 23. In this case, common questions include whether the defendants acted as fiduciaries, what communications they made to plan participants and beneficiaries, and whether those communications contained material misrepresentations. *See Feret,* 1998 WL 512933, at *9–10 (holding that commonality was met notwithstanding individual questions of reliance and damages; stating that even though different plan members may have received different information, a common question was whether the information constituted a material misrepresentation). Other common questions include whether the individual defendants were aware of the alleged improprieties committed by Ikon, whether there were conflicts of interest and what actions were taken if there were, whether the defendants took appropriate steps to protect the plan and recover damages, and whether there might be co-fiduciary liability. *See* Plf. Reply Mem. of Feb. 7, 2000, at 11 n. 6 (listing 14 common questions).[7]

---

6. The differences between securities fraud and the present ERISA claims are indirectly addressed in a Second Circuit case raised by plaintiffs at the hearing. In *Weinberger v. Kendrick,* 698 F.2d 61 (2d Cir.1982), the Second Circuit addressed a situation in which a proposed settlement of a securities fraud class action was accompanied by an amended complaint. The amended complaint "included ... persons who merely *held* rather than *purchased* ... securities during the class period." *Id.* at 68. These holder claims were based both on state and federal causes of action, although the original securities fraud action had claimed only federal law violations. The Second Circuit considered the propriety of adding these holder claims and noted that "[s]o far as concerns a class member who had purchased ... securities prior to and during the class period, the court clearly had jurisdiction to entertain the claims arising from mere holding as well as those arising from purchase as a matter of pendent jurisdiction." *Id.* at 76. The more difficult question was whether holder claims of those who had no federal cause of action could be included under the court's pendent jurisdiction. *See id.* In a subsequent examination of the settlement's fairness, the court suggested that such claims cannot ordinarily be brought under federal securities law because of the federal requirement that fraud claims be " 'in connection with' the purchase or sale of a security[.]" *Id.* at 78.

In other words, *Weinberger* lends credence to plaintiffs' suggestion that the reason that the holder issue rarely arises in federal securities law is because of the elements of the cause of action, which differ markedly from the elements of an ERISA claim. For example, the Third Circuit's rulings in the *Unisys* litigation repeatedly referred to possible breaches of duty with respect to participants' decisions to "maintain" stock in a particular investment. *See Unisys Savings Plan Litig.,* 74 F.3d 420, 442 (3d Cir.1996) (stating that misrepresentation is material if there was a "substantial likelihood that it would have misled a reasonable participant in making an adequately informed decision about whether to place or maintain monies" in the funds); *id.* at 448 (referring again to whether plaintiffs made an informed decision "to contribute to and/or maintain assets" in a fund); *Unisys Savings Plan Litig.,* 173 F.3d 145, 159 (3d Cir.1998) (noting that part of plaintiffs' claim was that fiduciary did not warn fund participants that a high-level executive had "purged" his own portfolio of stock).

7. Although described as a causation argument rather than a commonality objection, defendants also argue that a class containing holder claims cannot be certified because it essentially seeks illegal information. *See* Def. Reply Mem. of Feb. 7, 2000, at 8. That is, according to defendants, plaintiffs argue that they should have been given information as to the shaky nature of Ikon's finances prior to the general public, because then they could have sold their stock for an artificially inflated price. *See Crocker v. FDIC,* 826 F.2d 347, 350–52 (5th Cir.1987) (discussing similar theory in context of holding that shareholders did not properly claim injury and thus had no standing to assert a RICO claim in a nonderivative suit). The court does not resolve the merits of this claim for present purposes but notes that fiduciaries may have a duty to trust beneficiaries that requires disclosure of matters within their knowledge apart from any duty of disclosure towards the general public. *See Unisys Savings Plan Litig.,* 74 F.3d at 443 (declining to resolve a similar issue when it was unnecessary to the holding).

■ Defendants' position also ignores the fact that the appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs. *See, e.g., Bunnion v. Con. Rail,* Civ. A. No. 97–4877, 1998 WL 372644, at *6 (E.D.Pa. May 14, 1998). Even if there are significant differences in the damages that may be claimed by those who acquired stock based on misrepresentations and those who held stock based on misrepresentations, both groups must prove the same core issues: whether there were misrepresentations and whether the defendants even acted as fiduciaries.

Obviously, the court makes no ruling as to the ultimate viability of these holder claims or their likelihood of success. Accordingly, the accompanying order explicitly acknowledges that defendants may revisit this issue. The court merely rules, at present, that existence of holder-based claims does not defeat class certification per se, and that the plaintiffs have made a showing that there is at least one common question of law of fact.

b. Defendants' Objections to Typicality

■ The defendants apply their holder class analysis here as well, arguing that the differences in individual circumstances preclude a finding of typicality, apparently because of differences in the theories on which the various holder claims might ultimately depend. These arguments are also unpersuasive, given that the named plaintiffs and the putative class would necessarily allege a similar course of conduct: that Ikon and the individual defendants failed to provide accurate information in violation of ERISA obligations. "The various forms which ... injuries may take do not negate a finding of typicality, provided the cause of those injuries is some common wrong." *In re Prudential Ins. Co.,* 148 F.3d at 312; *Hassine,* 846 F.2d at 177 (stating that injuries need not be identical so long as the

"harm complained of [is] *common* "). Each member of the putative class, were the claims brought separately, would need to establish that there were misrepresentations and that there was a breach of fiduciary duty before recovery would be possible. *See id.* The Third Circuit has approved (in fact, required) the certification of classes even in situations in which there may be extreme individual questions of reliance or causation so long as there are similar legal theories underlying the various injuries. *See Eisenberg,* 766 F.2d at 786–87. Here, there is as yet no convincing argument that the plaintiffs' legal theories are actually in conflict with those of whom they seek to represent.

In addition to holder claims, defendants argue that Whetman is atypical because she attempted to use the threat of a class action as leverage to settle her individual claim. Initially, defendants have offered little support for this claim, and plaintiffs state that the settlement negotiations described occurred before the original complaint was even filed. *See* Plf. Reply Mem. of Feb. 7, 2000, at 13. Also, the cases cited by defendants, primarily *Franks v. Kroger Co.,* 649 F.2d 1216 (6th Cir.1981), are distinguishable. For example, the named plaintiffs in *Franks* entered into a settlement by which they and their counsel received monetary compensation but no other class members received any tangible benefit. *See id.* at 1225. There is no indication that Whetman's initial efforts to settle an individual claim are indicative of a tendency to sell other class members short.

Finally, defendants argue that Whetman and Peterson are atypical because they are subject to the unique defense that they held their stock even following their awareness of fraudulent activity and the ultimate disclosure of Ikon's charge to earnings.[8] Aside from the lack of record evidence on this subject, the court agrees with plaintiffs that this point does not cast doubt on the typicali-

8. In support of their position, defendants cite to the Third Circuit's decision in *Unisys,* 173 F.3d at 159. In *Unisys,* the plaintiffs appealed following a bench trial in which the trial court found that plaintiffs had not proved breach of fiduciary duty, in part because the named plaintiff and other class members failed to prove that alleged failures to disclose caused the participants to suffer damages. *See id.* The Third Circuit af-

firmed this ruling. That case is of limited applicability, however, because its ruling came in the context of a bench trial in which the class had already been certified. Obviously, should it be found that none of the class members suffered actual damages, the court will reconsider class certification or address this issue in an appropriate motion for summary judgment, as the situation may require.

ty of Whetman and Peterson. The focus of this inquiry is whether the named representatives rely on a similar legal theory as will the putative class, not whether the parties behaved identically in response to the alleged breaches of fiduciary duty.[9]

### 3. Adequacy

■ Finally, the court must find that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). In making this inquiry, the court should look to the ability and skill of plaintiffs' counsel and to whether or not plaintiffs' interests are antagonistic to those of the class. *See Moskowitz*, 128 F.R.D. at 635; *see also Amchem*, 521 U.S. at 625, 117 S.Ct. 2231 (adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent"). Defendants raise no challenges on this point besides, implicitly, those attacking the propriety of representation by Whetman and Peterson. As the court has already addressed these issues, the adequacy requirement is met.

### B. Requirements of Rule 23(b)(1)

Plaintiffs seek to certify this class pursuant to Rule 23(b)(1). This Rule provides that a class may be certified if

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests[.]

Fed.R.Civ.P. 23(b)(1). That is, 23(b)(1)(A) considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members. *See Bunnion*, 1998 WL 372644, at *13. Certifications under either subsection are common in labor cases such as this one because of the defendants' "unitary treatment" of putative class members. *Id.; see also* Fed.R.Civ.P. 23 advisory comm. notes (stating that certification under 23(b)(1) is appropriate in cases charging breach of trust by a fiduciary to large class of beneficiaries).

Defendants here do not quarrel with the notion that ruling as to one plaintiff's claim would be dispositive of many others' or that there is a risk of inconsistent adjudications from the defendants' perspective should the cases be tried separately. They do, however, reiterate their arguments pertaining to a holder class. Defendants argue that a 23(b)(1) class is inappropriate in the presence of any individualized issues and suggest that the elements of reliance and causation are "too individualized to allow a class action to proceed for those who held their stock[.]" Resp. at 11.

■ The court again finds that the potentially individualized questions do not affect any of the essential aspects of the class action, which are the common course of conduct by the defendants towards the putative class and the significance of the misrepresentations, if any. The court agrees that, given the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief. *See, e.g., Feret*, 1998 WL 512933, at *13; *Bunnion*, 1998 WL 372644, at *14; *Kane v. United Indep. Union Welfare Fund*, Civ. A. No. 97–105, 1998 WL 78985, at *8–9 (E.D.Pa. Feb. 24, 1998). There is also risk of inconsistent dispositions that would prejudice the defendants: contradictory rulings as to whether Ikon had itself acted as a fiduciary, whether the individual defendants had, in this context, acted as fiduciaries, or whether the alleged misrepresentations were material would create difficulties in implementing such decisions.[10]

---

9. Defendants also allege that Peterson herself engaged in fraudulent practices. There is no support for these claims at present besides the statement in the brief.

10. On this point, defendants cite *Grossman v. FoxMeyer Health Corp.*, Def. Reply Mem. of Feb. 8, 2000, Ex. A, a Texas state court decision from Dallas County, for the proposition that a holder

Defendants also argue that this claim is more properly certified as a 23(b)(3) class, which requires a showing that common issues predominate and that the class action is the superior method for adjudicating the claims. They argue that Rule 23(b)(1) is most properly applied to limited fund claims and to classes in which the primary relief sought is injunctive. *See, e.g. Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 119 S.Ct. 2295, 2308–15, 144 L.Ed.2d 715 (1999).

The court does not dispute these facts, although it notes that Rule 23(b)(1) is not exclusively applied in limited fund classes. While the court leaves open the possibility that further discovery and development of the factual record may warrant certification of a 23(b)(3) class, the briefing on the 23(b)(3) issues is cursory at best and has not addressed the relative merits of certifying a 23(b)(3) class if the class may also be maintained as a 23(b)(1) class. Consequently, the court will certify the action only as a 23(b)(1) class for present, with the recognition that circumstances may change in the future.

### III. Class Allegations from August 13, 1998, until the Present

The court comments briefly on the plaintiffs' argument that the class should extend to the present rather than ending on August 13, 1998.

The court agrees with the defendants that, at this stage, the plaintiffs have not provided any basis for the court to certify an open-ended class. The complaint itself is ambiguous as to when the class period should end: most of the allegations appear to concern misrepresentations related to the alleged financial improprieties that occurred prior to the charge to earnings, and there is no explanation as to what types of allegations plaintiffs might be raising after that date. *See* 2d Am. & Supp. Compl. ¶¶ 198–202. In subsequent papers filed in support of class certification, the only real discussion of class alle-

gations following August 13, 1998, is found in the plaintiffs' reply memorandum of February 7, 2000. Here, plaintiffs argue that the defendants' alleged wrongdoing continued until well after August 13, 1998, and they include an e-mail issued by Jim Forese on August 31, 1998, to all Ikon employees providing information regarding the securities fraud action. *See* Plf. Reply Mem. of Feb. 7, 2000, Ex. C.

Put in the Rule 23 framework, the court concludes that there is simply no evidence before it from which it can conclude that plaintiffs have met their burden of showing that claims after August 13, 1998, meet the numerosity, typicality, commonality, and adequacy inquiries. Without more, the e-mail from August 31 is not sufficient to meet plaintiffs' burdens. This ruling is without prejudice, as the court acknowledges that plaintiffs have not been able to engage in meaningful discovery.

### IV. Conclusion

As the parties have seemingly agreed that some class should be certified, the real issues are the duration of the class and whether it should include "holder" claims. The court will certify a class period from October 1, 1995, until August 13, 1998, as the plaintiffs have not yet demonstrated that Rule 23's requirements are met for the longer time period. The court will certify a class that includes "holder" claims because of the unique ERISA context. However, mindful of the difficulties highlighted by the defendants, this certification will explicitly be conditional.

An appropriate Order follows.

### ORDER

**AND NOW,** this 13th day of March, 2000, upon consideration of the Plaintiffs' Motion for Class Certification, the response thereto, the other submissions of the parties, and

class cannot be certified under 23(b)(1) because of the predominance of individual issues. That court was actually considering certification under the Texas equivalent of Rule 23(b)(3), which focuses on the superiority of the class action vehicle and the predominance of individual issues. *Grossman* was not an ERISA case and the

question of "insider" information was more pronounced than it is here, where any fiduciaries had a specific obligation to consider the interests of the beneficiaries under the plan. Also, the *Grossman* court had serious reservations about the capabilities of the class representative. .

**468**

after a hearing, it is hereby **ORDERED** that the Motion is **GRANTED** as follows:

1. Count VIII of the Second Amended and Supplemental Complaint filed in *Whetman v. Ikon*, D. Utah No. 2–98–cv–89, E.D. Pa. MDL No. 1318, alleging violations of the Employee Retirement Income Security Act of 1974 (ERISA), shall conditionally be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(1). The ERISA class is defined as follows:

> All participants and beneficiaries of the Alco Standard Corporation Retirement Savings Plan or the IKON Office Solutions, Inc. Retirement Savings Plan (collectively without distinction the "Plan"), at any time after September 30, 1995, and through August 13, 1998, who suffered losses recognized under ERISA with respect to investments in the Alco Stock Fund or IKON Stock Fund. If the settlement described in the Notice of Pendency of Class Action Proposed Settlement and Hearing Thereon, dated January 14, 2000 (the "Securities Litigation Notice") is approved, the losses suffered by members of the ERISA Class who are also members of the "Global Class" (as defined in the Securities Litigation Notice) and do not opt out of such Global Class shall exclude losses of ERISA Class members that are due to acquisitions, directly or indirectly, of "IKON Securities" at wrongfully inflated prices during the "Class Period" (as those terms are used in the Securities Litigation Notice).

2. This Order is conditional and without prejudice to any party's right to move this court to alter, amend, or decertify this class or to raise issues concerning the class.

3. This Order is without prejudice to defendants' arguments that no cause of action exists with respect to "holder" claims, i.e., stock acquisitions before the beginning of the ERISA Class period or any dates on which the plaintiffs establish that corrective action should have been taken or to the contention that the class should be certified under Rule 23(b)(3) rather than Rule 23(b)(1). This Order is also without prejudice to plaintiffs' arguments that the ERISA Class period should be expanded because of the communications of August 31, 1998, described in the foregoing memorandum, or otherwise.

4. To the extent that any applicable statute of limitations for members of the class alleged in Count VIII of the Second Amended and Supplemental Complaint in *Whetman* who are not members of the ERISA Class as defined above has been tolled pending decision on class certification, that tolling remains in effect.

