Shamell **SAMUEL–BASSETT,**

v.

**KIA MOTORS AMERICA, INC.**

No. CIV.A. 01–CV–0703.

United States District Court, E.D. Pennsylvania.

Dec. 13, 2002.

---

James A. Francis, Mark D. Mailman, Francis & Mailman, P.C., Michael D. Dono-van, David A. Searles, Donovan Searles, LLC, Alan M. Feldman, Feldman, Shepherd, Wohlgelernter and Tanner, Philadelphia, PA, Craig Thor Kimmel, Robert M. Silverman, Kimmel & Silverman, P.C., Ambler, PA, for plaintiff.

Joseph Kernen, Neal Walters, Piper, Rud-nick LLP, Philadelphia, PA, for defendants.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

By way of the motion which is now pending before this Court, Plaintiff, Shamell Samuel–Bassett, moves to certify this case as a class action. For the reasons which follow, the motion shall be granted.

### Factual Background

Plaintiff filed this action in January, 2001 "on her own behalf and on behalf of all other persons similarly situated" for damages arising out of an allegedly defective brake system in the model year 2000 Kia Sephia automobile which she purchased from Bernicker Kia in Philadelphia, PA. Specifically, Plaintiff alleges that her car suffers from a braking defect which causes it to shudder, vibrate, make grinding and groaning noises upon application of the brakes and that it often is unable to stop. At least five attempts were made to repair Ms. Bassett's Sephia within the first 17,000 miles by replacing the brake rotors and pads, apparently without lasting success. Although Plaintiff allegedly demanded timely rescission of her purchase of the vehicle from the defendant, her demand was refused.

By this action, Ms. Bassett seeks damages for the defendant's violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1, *et. seq.* and the Magnuson–Moss Warranty Improvement Act, 15 U.S.C. § 2301, *et. seq.,* and breaches of implied and express warranties. She further seeks to represent a class consisting "of all residents of Pennsylvania who purchased and/or leased Kia Sephia automobiles for personal, family or household purposes within in six years preceding the filing of the Complaint in this action."

### *Standards for Certification of Class Actions*

 The standards governing class action certifications are delineated in Fed. R.Civ.P. 23. In order to be certified, a class must satisfy all of the four requirements in Rule 23(a) and at least one of those set forth in Rule 23(b). *See, Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 613–614, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997). Specifically, Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b) states:

> An action may be maintained as a class action if the prerequisites of subdivision(a) are satisfied, and in addition:
>
> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members,

and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

A court's consideration of whether class certification is appropriate under Rule 23 is not intended to be an inquiry into the merits of the plaintiff's claims; however, where the plaintiff's claims involve complex questions of fact and law, it may be necessary for a court to delve beyond the pleadings to determine whether the requirements of class certification are satisfied. *Brooks v. Educators Mutual Life Insurance Company,* Civ. No. 00–3860, 206 F.R.D. 96, 100–01 (E.D.Pa.2002), citing *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 166–67 (3d Cir.2001). It is the plaintiff, as the party seeking class certification, who has the burden of proving that the class should be certified. *Freedman v. Arista Records,* 137 F.R.D. 225, 227 (E.D.Pa.1991), *citing Davis v. Romney,* 490 F.2d 1360, 1366 (3d Cir. 1974). This fact notwithstanding, a plaintiff has no obligation to "prove" her case at this point; rather, the court's resolution of the class motion is limited to ascertaining whether the requirements of Rule 23(a) and (b) are met. *In re Ikon Office Solutions, Inc.,* 191 F.R.D. 457, 462 (E.D.Pa.2000).

### 1. Rule 23(a) Requirements.

 While the four prerequisites of Rule 23(a) overlap, there is a conceptual distinction between the first two prerequisites—commonality and numerosity, which evaluate the sufficiency of the class itself, and the last two prerequisites—typicality and adequacy of representation, which evaluate the sufficiency of the named class representatives. *Thomas v. SmithKline Beecham Corp.,* 201

F.R.D. 386, 391 (E.D.Pa.2001). The concepts of commonality and typicality are broadly defined and tend to merge. *Barnes v. American Tobacco Co.,* 161 F.3d 127, 141 (3d Cir.1998), citing *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir.1994). The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals. *Id.*

### A. *Numerosity*

As noted, Rule 23(a) first requires that a potential class "be so numerous that joinder of all members is impracticable." Fed. R.Civ.P. 12(a)(1). In undertaking this inquiry, the court is to be guided by common sense. *Thomas v. SmithKline, supra.* Impracticality does not mean impossibility of joinder, but only the difficulty or inconvenience of joining all members of the class. *In re Ikon, supra,* citing *Moskowitz v. Lopp,* 128 F.R.D. 624, 628 (E.D.Pa.1989); *Zinberg v. Washington Bancorp, Inc.,* 138 F.R.D. 397, 406 (D.N.J.1990). While there is no requirement that a certain number of class members be alleged, the Third Circuit did recently hold that if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met. *See Stewart v. Abraham,* 275 F.3d 220, 227–228 (3d Cir.2001); *Brooks v. Educators,* 206 F.R.D. 96, 100–01.

■ In this case, the plaintiff's amended complaint avers that, "[a]ccording to KMA's press releases, KMA sold over 166,000 Sephia automobiles in the United States of America for the years 1997, 1998 and 1999 alone." In her motion for class certification, Ms. Bassett cites to Defendant's response to her Interrogatory No. 8, which states that "[f]or 1997–2000, the total number of Sephia automobiles sold or leased within the Commonwealth of Pennsylvania was 10,042." We believe that joinder of 10,042 plaintiffs is impracticable and we therefore find that the numerosity requirement has been met.

### B. *Commonality*

■ Under Rule 23(a)(2), the court must find commonality, i.e., that "there are questions of law or fact common to the class."

Commonality does not require an identity of claims or facts among class members; instead the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. *Johnston v. HBO Film Management, Inc.,* 265 F.3d 178, 184 (3d Cir.2001); *In re Prudential Insurance Co. of America Sales Practices Litigation,* 148 F.3d 283, 310 (3d Cir.1998). Common questions are those which arise from a "common nucleus of operative facts." *Thomas v. SmithKline,* 201 F.R.D. at 392. Because Rule 23(a)(2) requires only a single issue common to all members of the class, the requirement is easily met and commonality is not defeated by a showing that individual facts and circumstances will have to be resolved. *Id.,* citing *Baby Neal,* 43 F.3d at 56–57 and *In re Ikon,* 191 F.R.D. at 463.

■ Here, Plaintiff argues that her and the potential class' "theory of liability is centered on a common grievance: that Kia knowingly sold one automobile model, the Sephia, with a uniformly defective braking system that affected all drivers, which Kia unsuccessfully attempted to remedy in a uniform manner." (Plaintiff's Brief, at pp. 29–30.) The Amended Complaint identifies the following common questions of law and fact:

(1) whether Defendant's Sephia automobiles possess the brake system defect alleged;

(2) whether Defendant lacks the means to repair the defect or replace the defective brake system;

(3) whether Defendant's conduct violates the Consumer Protection Law;

(4) whether the brake system defect constitutes a breach of the implied warranty of merchantability and of express warranty;

(5) whether Defendant has violated and continues to violate the Magnuson–Moss Warranty Improvement Act;

(6) whether members of the class are entitled to a declaration that Defendant's conduct constitutes a violation of the CPL, a breach of implied and express warranty, and a violation of the Magnuson–Moss Warranty Improvement Act;

(7) whether members of the class are entitled to be notified and warned about the brake system defect and are entitled to the entry of final injunctive relief compelling Defendants to issue a notification and warning to all class members concerning such a defect;

(8) whether members of the class are entitled to actual damages, representing (i) the failure of consideration in connection with and/or difference in value arising out of the variance between Defendant's automobiles as warranted and Defendant's automobiles containing the brake system defect; (ii) the depression of resale value of the automobiles suffered by Plaintiff and the class arising out of the brake system defect; (iii) sufficient funds to permit Plaintiff and the class to themselves repair each affected automobile using proper parts and adequately trained labor; and (iv) compensation for all out-of-pocket monies expended by the Plaintiff and the members of the class for repair attempts and loss of use of the vehicles.

Here, there is sufficient evidence on the record that Defendant indeed had knowledge that a vast number of its Sephia automobiles between at least 1997 and 2001 required replacement of brake pads and rotors at intervals of less than 5,000 miles. In view of this evidence and given that Ms. Bassett need only show one common question of law or fact and need not prove her case at this juncture, we find that she has satisfied the requirement of commonality.

## C. *Typicality*

Next, Rule 23(a)(3) mandates that the claims of the class representative must be typical of the class as a whole. This "typicality" requirement is intended to safeguard against interclass conflicts and to insure that the interests of the named plaintiffs are more or less coextensive with those of the class such that the class action will be fully, fairly and vigorously prosecuted. *Baby Neal,* 43 F.3d at 55. In considering typicality, the district court must determine whether "the named plaintiffs' individual circumstances are markedly different or the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Johnston v. HBO,* 265 F.3d at 184, quoting *Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.1985).

Although commonality and typicality are distinct inquiries, they are closely related and tend to merge, as both criteria seek to assure that the action can be practically and efficiently maintained and that the interests of the absentees will be fairly and adequately represented. *In re Ikon,* 191 F.R.D. at 462. Typicality is not identicality and thus factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory. *Brooks,* 206 F.R.D. at 102, citing *Johnston,* 265 F.3d at 184 and *Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 166–67 (3d Cir.2001). Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories. Thus, where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries so long as all the injuries are shown to result from the practice. *Baby Neal,* 43 F.3d at 58, citing *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157–159, 102 S.Ct. 2364, 2370–2371, 72 L.Ed.2d 740 (1982). In other words, typicality will generally be found to exist when the named plaintiffs and the proposed class members challenge the same unlawful conduct. *Id.*

In this case, the plaintiff asserts that her claims are typical of the claims of the proposed class because, like the proposed class members, she purchased a defective Sephia without having received any warning or notification from the defendant of the braking defect, the defendant's repeated efforts to repair the vehicle have not been successful and the defendant has refused to repurchase the vehicle from her. In as much as it appears to this Court that the plaintiff's claims are typical in these respects and that she seeks to challenge the defendant's policy

or practice of not disclosing the existence of the alleged braking defect to prospective purchasers and of not repurchasing such vehicles, we find that Ms. Bassett has satisfied this pre-requisite as well.

### D. *Adequacy of Representation*

 Lastly, Rule 23(a)(4) states that a class action may only be maintained if "the representative parties will fairly and adequately protect the interests of the class." In two respects, the adequacy of representation requirement is designed to ensure that the absent class members' interests are fully pursued. *See, In re Prudential,* 148 F.3d at 312. First, it tests the qualifications of the counsel to represent the class. *Barnes v. American Tobacco,* 161 F.3d at 141; *In re General Motors Corporation Pick–Up Truck Fuel Tank Products Liability Litigation,* 55 F.3d 768, 800 (3d Cir.1995). Second, it uncovers conflicts of interest between named parties and the class they seek to represent. *Amchem Products v. Windsor,* 117 S.Ct. at 2250. In short, the plaintiffs' attorney must be qualified, experienced and generally able to conduct the proposed litigation, and the plaintiffs must not have interests antagonistic to those of the class. *Weiss v. York Hospital,* 745 F.2d 786, 811 (3d Cir.1984). It is the defendants' burden to show the inadequacy of plaintiff's class representation. *Thomas,* 201 F.R.D. at 396; *Moskowitz v. Lopp,* 128 F.R.D. 624, 636 (E.D.Pa.1989).

 Applying these principles to the case at hand, we find that the plaintiff will adequately represent the interests of the proposed class despite the defendant's assertion to the contrary. Specifically, the defendant argues that Plaintiff is inadequate because (1) she has failed to raise a claim under the Pennsylvania Lemon Law; (2) her interests are antagonistic to those of the remainder of the proposed class because the brakes on her Sephia actually failed to stop her vehicle resulting in an accident in which she sustained personal injury and property damage on at least one occasion; and (3) an inspection of Plaintiff's vehicle revealed that there is absolutely nothing wrong with the brake system. Defendant does not appear to challenge the qualifications of Plaintiff's counsel.

In reviewing the evidentiary materials thus far produced, we note that although it may be true that the defendant's expert did not find anything wrong with the braking system in the plaintiff's Sephia, there is also ample evidence that Plaintiff had the brake pads and rotors repaired and/or replaced more than twelve times by the time the odometer read 45,000 miles and some four times by the 12,000–mile mark. Thus, while we do not doubt that the vehicle's brakes properly function with new pads and rotors and that the vehicle's brakes may have been fully operational when inspected by Defendant's expert, the vehicle's repair history nevertheless strongly suggests that the brake pads and rotors could again wear out in an unusually short period of time. In view of the fact that this is the gravamen of the plaintiff's class complaint, it appears that the plaintiff's interests are sufficiently aligned with those of the proposed class to render her an adequate class representative.

Moreover, try as we might, we cannot conceive of how Plaintiff's collision with another vehicle due to the complete failure of her brakes would operate to pit the plaintiff's individual interests against those of the class. Rather, we find that, if anything, this experience would likely make Ms. Bassett an even more zealous advocate on behalf of the class which she seeks to represent given that she now has firsthand experience and knowledge of the consequences of brake failure. We therefore reject the defendant's argument on this point and find that plaintiff would function adequately as a representative of the proposed class despite her having had an accident.

Finally, we note that Section 12 of the Pennsylvania Lemon Law, 73 P.S. § 1962 provides that "[n]othing in this act shall limit the purchaser from pursuing any other rights or remedies under any other law, contract or warranty." Accordingly, we conclude that Ms. Bassett's failure to plead a claim under the Lemon Law does not render her inadequate as a class representative in this case. It likewise appears from the pleadings, firm resumes and affidavits of counsel, that Plaintiff's attorneys are experienced and quite capable of undertaking the representation of

the class at issue. For all of these reasons, we therefore now find that Plaintiff has met the final requirement of Rule 23(a)(4).

### 2. Rule 23(b) Requirements

In addition to the pre-requisites of Rule 23(a), the plaintiff must also satisfy at least one of the Rule 23(b) requirements. Here, Plaintiffs move for certification under Rule 23(b)(1), (b)(2) and (b)(3).

Under Rule 23(b)(1), an action may be maintained as a class action if "the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." Plaintiff contends that this case should be certified under Rule 23(b)(1) "because it would make little sense for individual members of the [c]lass to prosecute separate actions, given the possibility of inconsistent adjudications," and because "[s]uch individual prosecutions would also risk adjudications that might dispose of the interests of other members who had not filed suit, and might present obstacles to the protection of those individuals' interests." (See, Plaintiff's 6/14/02 Memorandum of Law in Support of Motion for Class Certification, at p. 40). Plaintiff, however, fails to explain how individual actions would interfere with or otherwise unfairly dispose of the interests of those individuals who did not file suit or what the likelihood of inconsistent adjudications is. Moreover, she has offered no evidence to support these assertions and we therefore cannot find that she has met her burden of proving that this matter should be certified pursuant to Rule 23(b)(1).

■■■■ Under Rule 23(b)(2), certification is proper where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Class actions certified under Rule 23(b)(2) are limited to those cases where the *primary* relief sought is injunctive or declaratory relief. *Miller v. Hygrade Food Products, Corp.,* 198 F.R.D. 638, 640 (E.D.Pa.2001), citing *Barnes,* 161 F.3d at 142–143. Because unnamed members of classes certified under Rule 23(b)(2) are not given an opportunity to opt-out in the manner provided to members of classes certified under Rule 23(b)(3), cohesion of the class is necessary and is presumed where a class suffers from a common injury and seeks class-wide [injunctive] relief. *Wilson v. United International Investigative Services 401(k) Savings Plan,* No. 01–CV–6126, 2002 WL 734339 (E.D.Pa. April 23, 2002), citing *Barnes,* 161 F.3d at 142–143; *Miller v. Hygrade,* 198 F.R.D. at 641. In contrast, where monetary relief is requested, cohesion is less apparent, as awarding damages normally entails examination of individual claims. *Id.*

■■■■ Two showings must therefore be made in order to proceed under Rule 23(b)(2). First, the complaint must seek relief which is predominantly injunctive or declaratory. *Thomas,* 201 F.R.D. at 397, citing *Barnes,* 161 F.3d at 142. Second, plaintiffs must complain that defendants acted or refused to act on grounds generally applicable to the class. Such a showing is made when the defendants' conduct constitutes a pattern of activity. *Id.,* citing *Hurt v. Philadelphia Housing Authority,* 151 F.R.D. 555, 560–561 (E.D.Pa.1993) and *Dickerson v. United States Steel Corp.,* 64 F.R.D. 351, 358 (E.D.Pa.1974). It should be noted that while disparate factual differences can bar class certification, a factual dispute about the existence of a pattern of conduct does not. *Miller,* 198 F.R.D. 638; *Thomas,* 201 F.R.D. at 397.

■■■ In this matter, the plaintiff appears to assert claims for both monetary damages and injunctive/declaratory relief in the form of an order compelling Defendant to issue a notification and warning to all class members concerning the braking defect. As we recently noted in our decision in *Barabin v. Aramark Corporation,* 210 F.R.D. 152

(E.D.Pa. Oct.7, 2002), "[n]either the Third Circuit Court of Appeals nor the Federal Rules of Civil Procedure provide any guidance for determining when injunctive and/or declaratory relief is the primary relief sought in actions such as this one where both [remedies] are being pursued." We elected in that case, along with at least three other courts in this Circuit, to adhere to the principle first articulated by the Fifth Circuit Court of Appeals in *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402 (5th Cir.1998) that "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief." *Barabin,* 210 F.R.D. at 160–161, quoting *Wilson v. United International Investigative Services 401(k) Savings Plan,* Civ. A. No. 01–CV–6126, 2002 WL 734339 (E.D.Pa. April 23, 2002), *Reap v. Continental Casualty Company,* 199 F.R.D. 536, 547 (D.N.J.2001) and *Miller v. Hygrade Food Products Corp.,* 198 F.R.D. 638, 641 (E.D.Pa. 2001). "Incidental damages are those that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." Under *Allison,* a court should consider the following three factors in determining whether damages are "incidental"-(1) whether such damages are of a kind to which class members would be automatically entitled; (2) whether such damages can be computed by "objective standards" and not standards reliant upon "the intangible, subjective differences of each class member's circumstances," and (3) whether such damages would require additional hearings to determine. *Barabin,* at 161, citing *Allison,* at 415, *Reap,* at 547 and *Miller,* at 641.

■■■■ In this case, the plaintiff's requested damages consist of: (1) the difference in value between Defendant's automobiles as warranted and with the defective braking system; (2) the reduced resale value of the automobiles suffered by Plaintiff and the class as a result of the brake system defect; (3) the costs needed to repair each affected automobile using proper parts and adequately trained labor; and (4) compensation for all out-of-pocket monies expended by Plaintiff and members of the class for repair attempts and loss of use of the vehicles.

Presumably, the damages for the difference in value could be fairly easily calculated on behalf of the class as a whole assuming that a value could be placed on the vehicles with defective braking systems and that the value of the base model Sephia could be used. The remaining elements of damage are, however, reliant upon "the intangible, subjective differences of each class member's circumstances," and would likely require additional hearings to determine given that some individuals have undoubtedly expended more monies and incurred higher parts and labor costs to repair their vehicles than others. We therefore cannot find that the monetary damages sought here are merely "incidental" to the declaratory relief sought or that an injunction/declaratory judgment is the primary goal of the plaintiff's civil action. Consequently, certification under Rule 23(b)(2) would be inappropriate.

To obtain certification under Rule 23(b)(3), common questions must predominate over any questions affecting only individual members and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. To determine whether certification under this Rule is appropriate, the courts should consider the interest of the members of the class in individually controlling the prosecution or defense of separate actions, the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, the desirability or undesirability of concentrating the litigation of the claims in the particular forum and the difficulties likely to be encountered in the management of a class action. Fed.R.Civ.P. 23(b)(3)(A)-(D).

■■■■ The purpose of the Rule 23(b)(3) predominance requirement is to test whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Amchem Products, Inc. v. Windsor,* 521 U.S. at 623, 117 S.Ct. at 2249. Predominance incorporates the commonality requirement of Rule 23(a), but is more demanding. Hence, even if Rule 23(a)'s commonality requirement is satisfied, predominance may not be. *See, In re LifeUSA Holding, Inc.,* 242 F.3d 136, 144 (3d Cir.2001). Predominance of common

questions does not require a unanimity of common questions but rather demands that common questions outweigh individual questions. *Brooks v. Educators*, 206 F.R.D. at 104–05, citing *Johnston v. HBO Film Management*, 265 F.3d at 185 and *Newton v. Merrill, Lynch*, 259 F.3d at 187. The common questions and their predominance over individual claims are exemplified by the fact that if the plaintiff and every class member were each to bring an individual action, they would still be required to prove the existence of the alleged activities of the defendants in order to prove liability. *Snider v. Upjohn*, 115 F.R.D. 536, 541 (E.D.Pa.1987).

■ The superiority requirement asks the Court to balance, in terms of fairness and efficiency, the merits of the class action against those of alternative available methods of adjudication. *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 632 (3d Cir.1996). Any interest of class members in individually controlling the prosecution of separate actions must be outweighed by the efficiency of the class mechanism as each individual claim is sufficiently small to make individual suits impractical. *Georgine*, at 633; *Smith v. First Union Mortgage Corp.*, 1999 WL 509967 at *2 (E.D.Pa. July 19, 1999).

■ In this case, while the defendant has strenuously argued that this case does not satisfy Rule 23(b)(3) because the merits of each individual car owner's complaints must be evaluated along with their individual driving habits and conditions, we nevertheless find from the evidence amassed thus far that the questions common to the class clearly predominate over those which only affect certain individual owners. To be sure, there is but one model at issue in this case, manufactured at Kia's Korea plant.[1] The braking system is manufactured in such a way that the parts are fully interchangeable from one model year to the next. While Defendant is no doubt correct that each vehicle was driven differently by different drivers in different locations and that the vehicles manifested varying symptoms such as pulsating, grinding, vibration, and failure to stop, there is nonetheless more than sufficient indicia that a vast number of those Sephias manufactured and sold between 1995 and 2001 experienced some or all of the above symptoms and were subject to the wear-out of their brake pads and rotors before reaching the 5,000 mile mark *regardless* of who was driving them or where or how they were being driven.

■ As Kia's own Director of Technical Operations acknowledged, there is nothing to suggest that Kia drivers stop and go more than the drivers of any other vehicles. Moreover, there is further evidence that Kia was aware that there were ongoing problems with the Sephia's braking system by virtue of the parts sales history of the Sephia's brake pads and rotors, the Technical Service Bulletins which it issued, its ongoing efforts to redesign and improve its brake pads and rotors and to manufacture them for installation on all model year vehicles, its brake coupon program and the relatively high buy-back rate which the company had for the vehicle. We thus conclude that the questions of whether the Sephia possesses the brake system defect alleged and whether Defendant lacks the means to repair the defect or replace the defective brake system such as to render it liable for breach of express and implied warranties and under the Magnuson–Moss Warranty Improvement Act do predominate over those issues unique to the individual class members.[2]

---

1. This is in contrast to the facts in *Sanneman v. Chrysler Corporation*, 191 F.R.D. 441 (E.D.Pa. 2000), upon which Defendant here heavily relies in support of its argument against a finding of predominance.

2. These issues essentially involve the specific types of brake problems experienced, the individual driver's habits and daily driving conditions and the damages suffered. In determining whether common problems predominate, the court's inquiry is directed primarily toward the issue of liability. *Snider v. Upjohn*, 115 F.R.D. at 541, citing *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir.1977). Given the evidence that the problems with the Sephia's braking system have manifested themselves regardless of the individual driver's habits or circumstances, it appears that liability will primarily be predicated upon the jury's evaluation of the design of the Sephia's brakes and Kia's awareness of the problem and its efforts to resolve it. Thus, the individual questions at issue here largely concern the element of damages.

Likewise, in view of the fact that the class potentially numbers more than 10,000 and the relatively low cost of the car,[3] we believe that a class action would be superior to and more efficient than adjudicating more than 10,000 individual lawsuits. In so holding, however, we do recognize the merit to Defendant's argument that under *Werwinski v. Ford Motor Company,* 286 F.3d 661(3d Cir.2002), the economic loss doctrine applies to bar Plaintiff's claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Accordingly, class certification shall be granted only with respect to Counts II, III and IV of the Amended Complaint and judgment as a matter of law shall be entered in favor of the defendant as to Count I of the Amended Complaint raising a claim under the UTPCPL.

For all of the above reasons, Plaintiff's Motion for Class Certification shall be granted. An appropriate order follows.

William E. Mahoney, Jr., Stradley, Ronon, Stevens & Young, Michael D. O'Mara, Stradley, Ronon, Stevens & Young, LLP, Philadelphia, PA, for Plaintiffs.

Jacquelyn J. Ager, Conrad, O'Brien, Gellman & Rohn, P.C., Nicholas M. Centrella, Conrad, O'Brien, Gellman and Rohn, Philadelphia, PA, Andrew B. Clauss, Cozen & O'Connor, West Conshohocken, PA, for Defendants.

---

**3.** As noted in our May 9, 2001 Memorandum and Order addressing Plaintiff's Motion to Remand, the base purchase price of Plaintiff's 2000 model year vehicle was $13,370.