Bonita **BARABIN**, Randolph Robinson, Dwight Sumpter, Erica Seamon, Louise Anderson, Joseph Sheppard, Romont Robinson, Len Simpkins, Kenneth Govan and Vernon Draper

v.

**ARAMARK CORPORATION**, Aramark Services Management of PA, Inc., Aramark Healthcare Support Services, Inc., Dorothy Homony and Chris Hornbecker.

Civ.A. No. 01–CV–4161.

United States District Court, E.D. Pennsylvania.

Oct. 7, 2002.

Stephen A. Whinston, Jonathan Auerbach, Shanon J. Carson, Berger & Montague, P.C., Joel I. Fishbein, Abrahams, Loewenstein & Bushman, Philadelphia, PA, for Plaintiffs.

John B. Langel, Leslie C. Safran, Ballard Spahr, Susan R. Becker, U.S. Attorneys Office, Philadelphia, PA, for Defendants Aramark.

Neil J. Hamburg, Michael E. Sacks, Hamburg & Golden, P.C., Philadelphia, PA, for Defendant Dorothy Homony.

Creed C. Black, Jr., Philadelphia, PA, for Defendant Chris Hornbecker.

1. It appears from the pleadings that ARAMARK Health Support Services, Inc. and ARAMARK Services Management of PA, Inc. are subsidiaries of ARAMARK Corporation (hereafter "ARAMARK Defendants") and that the ARAMARK de-

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This Title VII action is now before the Court for disposition of Defendants' Motion to Strike Plaintiffs' Class Allegations and Plaintiffs' Cross–Motion to Certify this Matter as a Class Action. For the reasons discussed below, the defendants' motion shall be granted and the plaintiffs' motion denied.

### Factual Background

According to the averments in their complaint, the plaintiffs are all African–Americans who were employed by the ARAMARK Defendants in varying capacities in either the Environmental Services, Patient Services or Distribution Departments at Presbyterian Medical Center in Philadelphia between November 15, 1999 or October, 2000 to the present.[1] Plaintiffs all aver that they were "subjected to frequent harassment and unjustified disciplinary actions by Caucasian supervisors not imposed on similarly situated Caucasian employees," in violation of Title VII, 42 U.S.C. § 2000e–5 and 42 U.S.C. § 1981 and that Defendants Dorothy Homony and Chris Hornbecker are individual supervisors. (Complaint, ¶s 2(b), 3(b), 4(b), 5(b), 6(b), 7(b), 8(b), 9(b), 10(b), 11(b), 15, 16, 47–54). Plaintiffs further seek to represent a class consisting of all "African Americans employed by the ARAMARK Defendants at Presbyterian Medical Center in the Environmental Services and Patient Services Departments from November 15, 1999 onward and in the Distribution Department from October, 2000 onward." (Complaint, ¶ 18).

By way of the pending motions, Defendants request that this Court strike the plaintiffs' class action allegations on the grounds that it is apparent from the face of the complaint that class action status cannot be maintained. In response, Plaintiffs have filed a motion to certify this matter as a class action.

fendants took over the provision of services in the Environmental Services, Patient Services and Distribution Departments at Presbyterian Medical Center ("PMC") on June 6, 1993. (Complaint, ¶s 12–14, 25).

*Standards for Class Action Certification*

Class actions are governed generally by Fed.R.Civ.P. 23. In order to be certified, a class must satisfy all of the four requirements set forth in Rule 23(a) and must be maintainable under at least one of the categories enumerated in Rule 23(b). *See, Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 613–614, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997). Thus, under Rule 23(a),

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Then, pursuant to Rule 23(b),

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
>> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>>
>> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . .

A court's consideration of whether class certification is appropriate under Rule 23 is not intended to be an inquiry into the merits of the plaintiffs' claims but where plaintiffs' claims involve complex questions of fact and law, it may be necessary for a court to delve beyond the pleadings to determine whether the requirements of class certification are satisfied. *Brooks v. Educators Mutual Life Insurance Company,* 206 F.R.D. 96, 100–01 (E.D.Pa.2002), citing *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 166–67 (3d Cir.2001). It is the plaintiff, as the party seeking class certification, who has the burden of proving that the class should be certified. *Freedman v. Arista Records,* 137 F.R.D. 225, 227 (E.D.Pa. 1991), *citing Davis v. Romney,* 490 F.2d 1360, 1366 (3d Cir.1974). This fact notwithstanding, plaintiffs have no obligation to "prove" their case at this point and the court's resolution of the class motion is limited to ascertaining whether the requirements of Rule 23(a) and (b) are met. *In re Ikon Office Solutions, Inc.,* 191 F.R.D. 457, 462 (E.D.Pa.2000). District courts have broad power and discretion vested in them by Rule 23 with respect to determining whether to certify a matter as a class action and how to thereafter manage it as such. *See: Reiter v. Sonotone Corp.,* 442 U.S. 330, 345, 99 S.Ct. 2326, 2334, 60 L.Ed.2d 931 (1979).

**1. Rule 23(a) Requirements.**

Although the four prerequisites of Rule 23(a) overlap, the Third Circuit has noted that there is a conceptual distinction between the first two prerequisites-commonality and numerosity-which evaluate the sufficiency of the class itself, and the last two prerequisites-typicality and adequacy of representation, which evaluate the sufficiency of the named class representatives. *Thomas v. SmithKline Beecham Corp.,* 201 F.R.D. 386, 391 (E.D.Pa.2001). Moreover, the concepts of commonality and typicality are broadly defined and tend to merge. *Barnes v. American Tobacco Co.,* 161 F.3d 127, 141 (3d Cir.1998), citing *Baby Neal v. Casey,* 43 F.3d

48, 56 (3d Cir.1994). The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals. *Id.*

### A. *Numerosity*

▮▮▮ Rule 23(a)(1) dictates that a potential class must "be so numerous that joinder of all members is impracticable." In undertaking this inquiry, the court is to be guided by common sense. *Thomas v. SmithKline, supra.* Impracticality does not mean impossibility of joinder, but only the difficulty or inconvenience of joining all members of the class. *In re Ikon, supra,* citing *Moskowitz v. Lopp,* 128 F.R.D. 624, 628 (E.D.Pa.1989); *Zinberg v. Washington Bancorp, Inc.,* 138 F.R.D. 397, 406 (D.N.J.1990). While there is no requirement that a certain number of class members be alleged, the Third Circuit did recently hold that if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met. *See Stewart v. Abraham,* 275 F.3d 220, 227–228 (3d Cir.2001); *Brooks v. Educators,* 206 F.R.D. 96, 100–01.

Although the complaint in this matter is silent, Plaintiffs aver in their Motion for Class Certification that there are approximately 150–200 members in the proposed class. Defendants do not appear to challenge this estimate and we therefore find, in light of the foregoing authorities, that the numerosity requirement has been satisfied.

### B. *Commonality*

▮▮▮ Under Rule 23(a)(2), the court must find commonality, i.e., that "there are questions of law or fact common to the class." Commonality does not require an identity of claims or facts among class members; instead the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. *Johnston v. HBO Film Management, Inc.,* 265 F.3d 178, 184 (3d Cir.2001); *In re Prudential Insurance Co. of America Sales Practices Litigation,* 148 F.3d 283, 310 (3d Cir.1998). Common questions are those which arise from a "common nucleus of operative facts." *Thomas v. SmithKline,* 201 F.R.D. at 392. Because Rule 23(a)(2) requires only a single issue common to all members of the class, the requirement is easily met and commonality is not defeated by a showing that individual facts and circumstances will have to be resolved. *Id.,* citing *Baby Neal,* 43 F.3d at 56–57 and *In re Ikon,* 191 F.R.D. at 463.

▮▮▮ In this case, the plaintiffs claim that there are seven questions of law or fact common to the proposed class:

(1) whether class members are subjected to disciplinary sanctions based on their race that are not imposed on similarly situated Caucasian employees;

(2) whether the pervasive harsh discipline, discriminatory acts and behavior of supervisors, and their use of derogatory language, slang and racial epithets constitute a hostile work environment for the class;

(3) whether the ARAMARK defendants knew or had reason to know of the discriminatory acts and practices of the supervisors for the class;

(4) whether the response, or lack thereof, of the ARAMARK defendants to the discrimination affecting the class warrants an award of punitive damages;

(5) whether the individual defendants conspired to deprive the class of equal treatment under the law;

(6) whether equitable relief is warranted and the nature of such relief; and

(7) the measure of compensatory damages.

▮▮▮ We are, of course, mindful that Plaintiffs have no obligation at this juncture to prove their case and that for purposes of class certification, we are bound to take the substantive allegations of the complaint as true. *See, Thomas,* 201 F.R.D. at 393, quoting *Cullen v. Whitman Med. Corp.,* 188 F.R.D. 226, 228 (E.D.Pa.1999). Consequently, we can agree that Plaintiffs share the legal and factual issues of the allegedly racially-based harsh discipline and potential disparate impact of that discipline with the members of the proposed class. The requirement of Rule 23(a)(2) is thus satisfied.

## C. *Typicality*

In addition, Rule 23(a)(3) dictates that the claims of the class representatives must be typical of the class as a whole. This "typicality" requirement is intended to safeguard against interclass conflicts and to insure that the interests of the named plaintiffs are more or less coextensive with those of the class such that the class action will be fully, fairly and vigorously prosecuted. *Baby Neal,* 43 F.3d at 55. In considering typicality, the district court must determine whether "the named plaintiffs' individual circumstances are markedly different or the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Johnston v. HBO,* 265 F.3d at 184, quoting *Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.1985).

Although commonality and typicality are distinct inquiries, they are closely related and tend to merge, as both criteria seek to assure that the action can be practically and efficiently maintained and that the interests of the absentees will be fairly and adequately represented. *In re Ikon,* 191 F.R.D. at 462. Typicality is not identicality and thus factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory. *Brooks,* 206 F.R.D. at 102, citing *Johnston,* 265 F.3d at 184 and *Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 166–67 (3d Cir.2001). Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories. Thus, where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries so long as all the injuries are shown to result from the practice. *Baby Neal,* 43 F.3d at 58, citing *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157–159, 102 S.Ct. 2364, 2370–2371, 72 L.Ed.2d 740 (1982). Stated otherwise, typicality will generally be found to exist when the named plaintiffs and the proposed class members challenge the same unlawful conduct. *Id.*

Here, Plaintiffs' complaint asserts that the claims of the named plaintiffs are typical of the claims of the members of the proposed class "in that all have been subjected to the disciplinary practices and hostile work environment caused by the Defendants" for which they seek redress. (Complaint, ¶ 21). In their motion, Plaintiffs assert that their claims "are typical of the claims of the members of the Class in that both Plaintiffs and the Class work under the supervision of the individual Defendants and are subject to the same hostile work environment created by their actions. Further, both Plaintiffs and the Class have been subjected to disciplinary sanctions imposed in a racially discriminatory manner." (Pl's Motion for Class Certification, ¶ 3). Given that we are obligated to take the substantive allegations of the complaint as true and in light of the fact that the defendants' motion "does not address the plaintiffs' ability or inability to meet the requirements of Rule 23(a)," we shall again give Plaintiffs the benefit of the doubt and find that a sufficient showing of typicality has been made. (*See,* Defendants' Memorandum of Law in Support of Motion to Strike Plaintiffs' Class Allegations, p. 5, n. 3).

## D. *Adequacy of Representation*

Finally, Rule 23(a)(4) provides that a class action may only be maintained if "the representative parties will fairly and adequately protect the interests of the class." The adequacy of representation inquiry has two components designed to ensure that the absent class members' interests are fully pursued. *In re Prudential,* 148 F.3d at 312; *Thomas,* 201 F.R.D. at 396. First, it tests the qualifications of the counsel to represent the class. *Barnes v. American Tobacco,* 161 F.3d at 141; *In re General Motors Corporation Pick–Up Fuel Tank Products Liability Litigation,* 55 F.3d 768, 800 (3d Cir.1995). Second, it serves to uncover conflicts of interest between named parties and the class they seek to represent. *Amchem Products v. Windsor,* 117 S.Ct. at 2250. Thus, the plaintiffs' attorney must be qualified, experienced

and generally able to conduct the proposed litigation, and the plaintiffs must not have interests antagonistic to those of the class. *Weiss v. York Hospital,* 745 F.2d 786, 811 (3d Cir.1984). The burden is on the defendants to show the inadequacy of representation of a plaintiffs' class. *Thomas,* 201 F.R.D. at 396; *Moskowitz v. Lopp,* 128 F.R.D. 624, 636 (E.D.Pa.1989).

 In this case, consistent with our earlier finding on commonality, we do not foresee that any conflicts of interest will arise such as would interfere with the plaintiffs' ability to represent the class. It further appears from the pleadings and the affidavits and firm resume attached as exhibits to the plaintiffs' Memorandum in Support of Motion for Class Action Certification that the plaintiffs and their attorneys are in all other respects qualified and capable of adequately representing the members of the proposed class. Finally, Defendants do not challenge either Plaintiffs' or their counsel's qualifications to represent the proposed class. For all of these reasons, we find plaintiffs and their attorneys competent to undertake the representation of the class here.

### 2. Rule 23(b) Requirements.

As discussed above, plaintiffs must also satisfy at least one of the Rule 23(b) requirements in addition to the four prerequisites of Rule 23(a). Here, Plaintiffs move for certification under Rule 23(b)(2) and (b)(3).

 Under Rule 23(b)(2), certification is proper where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Class actions certified under Rule 23(b)(2) are limited to those cases where the *primary* relief sought is injunctive or declaratory relief. *Miller v. Hygrade Food Products, Corp.,* 198 F.R.D. 638, 640 (E.D.Pa.2001), citing *Barnes,* 161 F.3d at 142–143. Because unnamed members of classes certified under Rule 23(b)(2) are not given an opportunity to opt-out in the manner provided to members of classes certified under Rule 23(b)(3), cohesion of the class is necessary and is presumed where a class

suffers from a common injury and seeks class-wide [injunctive] relief. *Wilson v. United International Investigative Services 401(k) Savings Plan,* No. 01–CV–6126, 2002 WL 734339 (E.D.Pa. April 23, 2002), citing *Barnes,* 161 F.3d at 142–143; *Miller v. Hygrade,* 198 F.R.D. at 641. In contrast, where monetary relief is requested, cohesion is less apparent, as awarding damages normally entails examination of individual claims. *Id.*

 Two showings must therefore be made in order to proceed under Rule 23(b)(2). First, the complaint must seek relief which is predominantly injunctive or declaratory. *Thomas,* 201 F.R.D. at 397, citing *Barnes,* 161 F.3d at 142. Second, plaintiffs must complain that defendants acted or refused to act on grounds generally applicable to the class. Such a showing is made when the defendants' conduct constitutes a pattern of activity. *Id.,* citing *Hurt v. Philadelphia Housing Authority,* 151 F.R.D. 555, 560–561 (E.D.Pa.1993) and *Dickerson v. United States Steel Corp.,* 64 F.R.D. 351, 358 (E.D.Pa.1974). It should be noted that while disparate factual differences can bar class certification, a factual dispute about the existence of a pattern of conduct does not. *Miller,* 198 F.R.D. at 638; *Thomas,* 201 F.R.D. at 397.

 At bar, the plaintiffs' complaint seeks both injunctive/declaratory relief and monetary damages for the defendants' purported violations of Title VII and Section 1981 and the alleged conspiracy of Defendants Homony and Hornbecker to violate Plaintiffs' civil rights. Neither the Third Circuit Court of Appeals nor the Federal Rules of Civil Procedure provide any guidance for determining when injunctive and/or declaratory relief is the primary relief sought in actions such as this one where both injunctive relief and monetary damages are being pursued. However, three other courts in this Circuit have administered the test formulated by the Fifth Circuit Court of Appeals in *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402 (5th Cir.1998). Given that we likewise find the *Allison* Court's rationale to be sound, we shall also apply that test under which "monetary relief predominates in (b)(2)

class actions unless it is incidental to requested injunctive or declaratory relief." *Wilson v. United International, supra; Reap v. Continental Casualty Company,* 199 F.R.D. 536, 547 (D.N.J.2001); *Miller v. Hygrade,* 198 F.R.D. at 641, all citing *Allison,* 151 F.3d at 415. Incidental damages, in turn, are those "that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief" and a court should consider three factors in determining whether damages are "incidental" for purposes of this test: (1) whether such damages are of a kind to which class members would be automatically entitled; (2) whether such damages can be computed by "objective standards" and not standards reliant upon "the intangible, subjective differences of each class member's circumstances," and (3) whether such damages would require additional hearings to determine. *See, Allison,* at 415, *Reap,* at 547 and *Miller,* at 641.

██ In reviewing the complaint in the case at bar, we cannot find that the primary relief sought is injunctive and/or declaratory in nature. Rather, it appears that the primary relief which plaintiffs seek is monetary in nature and that the request for injunctive/declaratory relief is secondary at best.[2] Indeed, Plaintiffs do not claim that damages in this matter can be computed on the basis of some objective, uniform calculation or in an amount which naturally follows from an entitlement to a declaration or injunction against further harm. In lieu of a claim for damages that automatically flow directly to the class as a whole, Plaintiffs aver that they have been "damaged in an amount to be proven at trial." This requires that evidence of the harm suffered by each plaintiff be produced for the jury's consideration at trial. We therefore conclude that the plaintiffs do not meet the criteria for class action certification under Rule 23(b)(2).

However, the plaintiffs also move for certification under Rule 23(b)(3). Under this Rule, common questions must predominate over any questions affecting only individual members and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. As articulated in the Rule, the matters pertinent to making these findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. Fed.R.Civ.P. 23(b)(3).

██ The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Amchem Products, Inc. v. Windsor,* 521 U.S. at 623, 117 S.Ct. at 2249. The Rule 23(b)(3) predominance requirement incorporates the commonality requirement of Rule 23(a), but even if Rule 23(a)'s commonality requirement is satisfied, predominance may not be as it is more demanding. *In re LifeUSA Holding, Inc.,* 242 F.3d 136, 144 (3d Cir.2001). A predominance of common questions does not require a unanimity of common questions but rather requires that common questions outweigh individual questions. *Brooks v. Educators Mutual Life Insurance Company,* at 104–05, citing *Johnston v. HBO Film Management,* 265 F.3d at 185 and *Newton v. Merrill, Lynch,* 259 F.3d at 187. In determining whether common problems predominate, the court's inquiry is directed

---

2. For example, in Counts I and II of the complaint, the plaintiffs assert that "[b]y virtue of Defendants' conduct as alleged herein, Plaintiffs and the Class have been damaged and injured in an amount to be proven at trial and are entitled to all legal and equitable remedies available under Title VII of the Civil Rights Act...the Civil Rights Act of 1866, as amended, including punitive damages. Plaintiffs also seek an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988." (Complaint, ¶s50, 54). In Count III (charging conspiracy against Defendants Homony and Hornbecker), it is particularly evident that the primary relief sought is of a legal, monetary nature, *to wit,* "For the foregoing reasons, Plaintiffs on their behalf and on behalf of the plaintiff Class seek all relief available under law including, but not limited to, compensatory damages, punitive damages, attorneys' fees, prejudgment interest, the costs of suit and any other legal or equitable relief the court deems appropriate." (Complaint, ¶ 59).

primarily toward the issue of liability. *Snider v. Upjohn*, 115 F.R.D. 536, 541 (E.D.Pa. 1987), citing *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir.1977). The common questions and their predominance over individual claims are exemplified by the fact that if plaintiff and every class member were each to bring an individual action, they would still be required to prove the existence of the alleged activities of the defendants in order to prove liability. *Id.*

 The superiority requirement asks the Court to balance, in terms of fairness and efficiency, the merits of the class action against those of alternative available methods of adjudication. *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 632 (3d Cir.1996). Any interest of members of the class in individually controlling the prosecution of separate actions must be outweighed by the efficiency of the class mechanism as each individual claim is sufficiently small to make individual suits impractical. *Id.*, at 633; *Smith v. First Union Mortgage Corp.*, 1999 WL 509967 at *2 (E.D.Pa.1999).

In applying the foregoing principles here, we cannot find that the predominance and superiority prerequisites have been satisfied. Indeed, it is clear from the complaint that while all of the plaintiffs aver that they were "subjected to frequent harassment and unjustified disciplinary sanctions by Caucasian supervisors not imposed on similarly situated Caucasian employees," the circumstances under which those acts of discrimination were committed and the resultant injuries are unique to each individual plaintiff.[3] The plaintiffs' individual claims for damages would therefore require individ-

ualized evaluations and findings of the facts and defenses. We thus conclude that the plaintiffs' individual claims would predominate over the common issue of whether the disciplinary measures taken against them were discriminatory in nature. Certification under Rule 23(b)(3) would therefore be inappropriate.[4]

For all of the foregoing reasons, we deny the plaintiffs' motion for class certification and grant the defendant's motion to strike class action allegations. Plaintiffs shall be directed to file an amended complaint deleting these averments in accordance with the attached order.

### ORDER

AND NOW, this 7th day of October, 2002, upon consideration of Defendants' Motion to Strike Class Allegations and Plaintiffs' Cross–Motion for Class Certification, it is hereby ORDERED that the Motion to Strike is GRANTED, the Motion to Certify is DENIED and Plaintiffs are DIRECTED to file an Amended Complaint deleting all class action allegations within twenty (20) days of the date of this Order. *See Also:* Fed.R.Civ.P. 23(d)(4).

---

3. For example, Plaintiff Barabin, who is employed in the Environmental Service Department, alleges that in retaliation for joining in the group grievance, her duties were expanded from two floors in one building to two floors in five buildings and that she continues to receive medical care for stress. (Complaint, ¶ 2(a)-(f)). Randolph Robinson, also an employee of the Environmental Services Department, was called a "black punk," suffered a three-day suspension without pay in November, 2000 and had his duties expanded to include the cleaning of more floors per shift. (Complaint, ¶ 3(a)–(e)). Len Simpkins, who was originally employed in the Patient Services Department was laid off from

November 13 to December 12, 1999 and subsequently terminated on July 12, 2000 after being charged with, *inter alia*, being out of uniform despite the fact that the uniforms he had been given by the defendant did not fit. (Complaint, ¶ 9(a)–(d)).

4. Given our determination that the predominance component of Rule 23(b)(3) cannot be met here, we see no need to discuss the superiority requirement. Suffice it to say that we do not find the class action mechanism to be superior in terms of efficiency and fairness in view of the multitude of uncommon issues in this case.