**In re SAFEGUARD SCIENTIFICS.**

**No. CIV.A. 01–CV–3208.**

United States District Court,
E.D. Pennsylvania.

Aug. 26, 2003.

**578**

Allan H. Gordon, Kolsby, Gordon, Robin, Shore & Bezar, Philadelphia, PA, Daniel A. Osborn, Beatie & Osborn, LLP, New York City, for Plaintiffs.

Steven B. Feirson, Dechert, Price & Rhoads, Philadelphia, PA, William K. Dodds, Dechert Price & Rhoads, New York City, H. Robert Fiebach, Cozen & O'Connor, Philadelphia, PA, Curtis V. Trinko, New York City, Donald B. Lewis, Law Offices of Donald B. Lewis, Bala Cynwyd, PA, Stephen A. Whinston, Berger & Montague, Philadelphia, PA, for Defendants.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court is the Motion to Certify This Action as a Class Action Pursuant to Rule 23 of the Federal Rules of Civil Procedure of Lead Plaintiff Paul R. Adal ("Lead Plaintiff") and other named Plaintiffs ("Plaintiffs"). Plaintiffs bring this action pursuant to Fed.R.Civ.P. 23(a) and (b)(3). Plaintiffs' claims arise against Defendants Safeguard Scientifics, Inc. ("Safeguard") and Warren V. Musser ("Musser") for violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78 *et seq.*, and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. For the reasons that follow, the Motion is DENIED.

### BACKGROUND

This action is a consolidation of cases that now seeks certification as a class action on behalf of individuals who purchased common stock of Safeguard during the period between December 1, 1999 and December 5, 2000. According to their Complaint, Plaintiffs allege that Defendant Safeguard, a Pennsylvania corporation, was in the business of incubating and operating technology companies. At times, Safeguard acquired equity interests in "partner companies" and after developing the businesses, would prepare them for initial public offerings or private sales. Defendant Musser served as Safeguard's Chairman and CEO.

Plaintiffs aver that during the class period Defendants engaged in materially misleading statements and omissions regarding Musser's margin trading and a Safeguard loan in connection with Musser's margin debt. Beginning in December 1999, Musser began trading on margin, using his over three million shares in Safeguard as collateral.[1] At that time, his shares were worth over $300 million. Plaintiffs allege that Musser began purchasing shares in Safeguard's partner companies, which included investments in companies such as Internet Capital Group for approximately $25 million, Sanchez Computer Associates, Inc. for approximately $10 million, and eMerge Interactive, Inc. for approximately $15 million. In all, Plaintiffs

---

1. On March 20, 2000, Safeguard stock underwent a three-for-one split. At which point, Musser owned over nine million shares of Safeguard.

allege that Musser invested approximately $100 million in Safeguard's various partner companies. Under the loan agreement, Musser's brokerage would be able to call the pledge collateral once Safeguard's stock price fell below $20.

On September 27, 2000, Safeguard's stock price fell below $20 per share, and according to Plaintiffs, Musser's brokers began issuing margin calls. In an effort to avoid or forestall the sale of his stock, Musser called an emergency telephonic meeting of the Safeguard Board on September 28, 2000. Plaintiffs aver that the Board approved a $10 million loan to Musser and guaranteed $35 million of his personal margin debt. Plaintiffs claim that this loan transaction was material and was not disclosed for over two months.

Plaintiffs further alleged that on or about October 18, 2000, Musser sold 39,900 shares of Safeguard, and the transaction was later disclosed on November 13, 2000. On or about October 19, 2000, Musser then gifted one million shares to his charitable trust. On November 29, 2000, Musser sold approximately 6.5 million shares of Safeguard in a private, non-market transaction.

According to Plaintiffs, on December 5, 2000, Safeguard publicly disclosed in a press release that Musser sold 7.5 million shares in private transactions in order to satisfy personal obligations under margin loan agreements. Safeguard also disclosed that it extended Musser the loan and guarantee in connection with Musser's margin loan.

Plaintiffs allege that Musser's margin trading artificially inflated the price of Safeguard stock and that the margin loans were material facts that should have been disclosed because of the inherent risk involved in margin trading and the possible ramifications a margin call would have on the state of the company. There are three proffered class representatives: Lead Plaintiff Paul R. Adal and Plaintiffs Nicolas Gilman and George Settos.

## DISCUSSION

### I. *Standards for Class Action Certification*

Rule 23 of the Federal Rules of Civil Procedure governs the certification of federal class actions. Under Rule 23(a), the four threshold requirements applicable to all class actions must be met: (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical...of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class"). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997). In addition to fulfilling the prerequisites of Rule 23(a), a class must show that the action is maintainable under Rule 23(b). Pursuant to Rule 23(b), an action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy....

Lead Plaintiff brings this motion to certify as a class action pursuant to Rule 23(b)(3). "To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond

the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Id.* at 615, 117 S.Ct. 2231. Fed.R.Civ.P. 23(b)(3) provides a non-exhaustive list of matters pertinent to the findings of predominance and superiority: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." The plaintiff, as the party seeking class certification, has the burden of showing that the class should be certified. *Barabin v. Aramark Corp.*, 210 F.R.D. 152, 157 (E.D.Pa.2002). However, "plaintiffs have no obligation to 'prove' their case at this point and the court's resolution of the class motion is limited to ascertaining whether the requirements of Rule 23(a) and (b) are met." *Id.* (citing *In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 462 (E.D.Pa. 2000)). Although the "court's consideration of whether class certification is appropriate under Rule 23 is not intended to be an inquiry into the merits of the plaintiffs' claims," *id.*, a "class certification decision requires a thorough examination of the factual and legal allegations." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166 (3d Cir.2001). In order to answer class certification questions which are often "enmeshed in the factual and legal issues comprising the plaintiff's cause of action," "courts may delve beyond the pleadings to determine whether the requirements for class certification are satisfied." *Id.* at 167. District courts have broad power and discretion vested in them by Rule 23 to determining whether to certify a matter as a class action and how to thereafter manage it as such. *See Barabin*, 210 F.R.D. at 157 (citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 345, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979)).

## 1. Rule 23(a) Requirements

### A. *Numerosity*

Rule 23(a)(1) requires that the potential class be "so numerous that the joinder of all members is impractical." "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001). "A court must generally also evaluate the practicability of joinder in the context of the particular litigation." *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 391 (E.D.Pa.2001). In making its determination, "a court is to be guided by common sense." *Id.*

Even though the exact number of shareholders that make up the class is unknown at this time, this Court finds that Plaintiffs have met the numerosity requirement, considering the millions of shares of Safeguard common stock that were publicly traded during the class period. In addition, Defendants do not challenge that Plaintiffs have met the numerosity requirement, so we need not address this requirement further. In light of the potential number of class members and the nature of this securities class action, we conclude that Plaintiffs' class would be too numerous to make joinder impractical.

### B. *Commonality*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Id.* at 391–92 (citing *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir.1994)). "Common questions are those which arise from a 'common nucleus of operative facts.'" *Id.* (citing *Kromnick v. State Farm Ins. Co.*, 112 F.R.D. 124, 128 (E.D.Pa.1986)). Because only a single issue common to all members of the class satisfies Rule 23(a)(2), the requirement is easily met. *See Baby Neal*, 43 F.3d at 56–57. Furthermore, "commonality is not defeated by a showing that 'individual facts and circum-

stances' will have to be resolved." *Thomas,* 201 F.R.D. at 392 (citing *In re Ikon,* 191 F.R.D. at 463).

Plaintiffs argue that commonality exists as to "the existence, nature and significance of defendants' omissions and misrepresentations, and defendants' liability for those omissions and misrepresentations." Pls.' Mem. Supp. Cl. Cert. at 27. Defendants do not contest that Plaintiffs have satisfied the commonality requirement. We find that there are common questions of fact regarding the Defendants' course of conduct, such as Defendant Musser's margin trading and Safeguard's subsequent allegedly "secret" loan. There is also at least one common question of law regarding whether misrepresentations were made in violation of a duty to disclose. Therefore, we find that the commonality requirement has been met.

### C. *Typicality*

Under Rule 23(a)(3), the court must find that "the claims or defenses of the representative parties are typical of the claims of the class." Typicality assesses "whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal,* 43 F.3d at 57. In determining typicality, the court must decide whether "the named plaintiffs' individual circumstances are markedly different or the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Johnston v. HBO,* 265 F.3d 178, 184 (3d Cir.2001) (quoting *Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.1985)). "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Baby Neal,* 43 F.3d at 58.

Defendant Safeguard argues that the named plaintiffs are atypical because there are numerous intra-class conflicts. Specifically, it contends that "there are conflicts between: (1) investors who bought and those who sold Safeguard stock on the same day; (2) investors who sold partner company stock during the class period and those in the putative class who did not; (3) investors who bought prior to November 29th and those who bought after; and (4) investors who bought and sold Safeguard stock and those that continue to hold it." Def. Safeguard's Mem. Opp. Cl. Cert. at 19. In highlighting the "purchaser-seller conflict," Defendant invokes a line of cases originating with *In re Seagate Tech. II Sec. Litig.,* 843 F.Supp. 1341 (N.D.Cal.1994) that deny class certification because of conflicts created by those who buy and those who sell stock on the same day. While price inflation is important in securities fraud cases, courts in this Circuit have generally rejected Seagate II reasoning as "prov[ing] far too much." *In re Honeywell Int'l, Inc.,* 211 F.R.D. 255, 261 (D.N.J.2002). Unpersuaded by Safeguard's argument, we leave the issue of price inflation to the determination of damages and can address any potential buyer-seller conflicts with the use of subclasses. *See Weikel v. Tower Semiconductor Ltd.,* 183 F.R.D. 377, 395–96 (D.N.J. 1998); *In re Regal Communications Corp. Sec. Litig.,* 1995 WL 550454, at *8, 1995 U.S. Dist. LEXIS 13492, No. 94–179, at *24 (E.D.Pa. Sept. 14, 1995) (stating that "it is the existence and materiality of a misstatement or omission that is central, and from it, price inflation and reliance are presumed."); *see also Blackie v. Barrack,* 524 F.2d 891, 911 (9th Cir.1975).

Defendant Safeguard's remaining arguments mainly point out factual differences which can similarly be handled within a determination of damages analysis or the use of subclasses. Plaintiffs' claims arise from the same events of allegedly material omissions and course of conduct that they claim injured all the class members. "Indeed, so long as 'the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences.'" *Johnston,* 265 F.3d at 185 (quoting *Newton,* 259 F.3d at 183–84). Typicality, however, is not satisfied when a class representative is subject to unique defenses which threaten to become the focus of litigation. *See Zenith*

*Labs., Inc. v. Carter–Wallace, Inc.,* 530 F.2d 508, 512 (3d Cir.1976). "A representative plaintiff should not be permitted to impose such a disadvantage on the class." *Id.* "In some circumstances, a plaintiff who is subject to unique defenses might not be deemed an appropriate class representative." *In re Linerboard Antitrust Litig.,* 203 F.R.D. 197, 211 (E.D.Pa.2001). "Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative." *Id.* (citing *Koos v. First Nat'l Bank,* 496 F.2d 1162, 1165 (7th Cir.1974)).

Defendant Musser also contests typicality, based on unique defenses. Since there is much overlap between the respective Defendants' typicality and adequacy arguments, we will consider Defendant Musser's arguments with respect to typicality when we address the adequacy of representation requirement.[2]

For the reasons that follow, we find that the representative parties are not typical of the class because of the unique defenses they face, and therefore they are also not adequate to protect the interests of the class.

### D. *Adequacy of Representation*

Rule 23(a)(4) permits class certification if "the representative parties will fairly and adequately protect the interests of the class." "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem,* 521 U.S. at 625, 117 S.Ct. 2231.[3]

■ Defendants argue that Lead Plaintiff Paul Adal is atypical and not an adequate representative because he is subject to

unique defenses regarding reliance and materiality. Ordinarily, under a fraud-on-the-market theory, there is "a presumption that 'an investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price.' " *In re Regal,* 1995 WL 550454, at *4, 1995 U.S. Dist. LEXIS 13492, at *13 (quoting *Basic, Inc. v. Levinson,* 485 U.S. 224, 247, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)). "The Third Circuit has specified three parts to this presumption: (1) that the misrepresentation affected the market price; (2) that a purchaser did in fact rely on the price of the stock as indicative of its value; and (3) that the reliance was reasonable." *Id.* (citing *Zlotnick v. TIE Communications,* 836 F.2d 818, 822 (3d Cir. 1988)). "A defendant may rebut this presumption by showing that the price was unaffected by the fraud or that the plaintiff would have made the purchase regardless of the misstatement/omission." *Id.*

Defendants have shown that Lead Plaintiff Adal increased his holdings in Safeguard stock even after public disclosure of the alleged fraud. Lead Plaintiff Adal would have made—and in fact did—purchase stock regardless of the fraudulent omission. Adal's purchases also raise serious doubts as to the materiality of the alleged fraud disclosures. In light of Lead Plaintiff Adal's employment as a day trader (or "position trader") who typically focuses on technical price movements rather than price, we find that even under a fraud-on-the-market theory, Defendants have presented compelling reason to rebut the reliance presumption. Additionally, serious concerns with credibility leave Lead Plaintiff vulnerable to further attacks that would impose an unnecessary disadvantage on the class.[4] These unique defenses

---

2. We note that typicality and adequacy of representation inquiries "tend to merge" because both look to the potential of conflicts in the class and to "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem,* 521 U.S. at 626 n. 20, 117 S.Ct. 2231; *see Weikel v. Tower Semiconductor Ltd.,* 183 F.R.D. 377, 389 (D.N.J.1998) ("We think that typicality is more akin to adequacy of representation: both look to the potential for conflicts in the class.").

3. The adequacy inquiry also serves to test the qualifications of the counsel to represent the class. *Barnes v. Am. Tobacco Co.,* 161 F.3d 127, 141 (3d Cir.1998). However, since Defendants do not challenge the adequacy of Plaintiffs' counsel to represent the class, we do not address that issue.

4. Lead Plaintiff Adal's sworn statement in a Certification Pursuant to the Federal Securities Laws omits a significant number of trades, which leads this Court to believe that the misstatement was more than mere clerical mishap. Although we do not resolve the issue of credibility at this

against Lead Plaintiff Adal preclude him from serving as a class representative.

Similarly, unique defenses also bar Plaintiff Gilman from serving as a class representative. Plaintiff Gilman brought arbitration proceedings against his broker, PaineWebber, for improper and misleading financial advice and unauthorized trades. Gilman received a settlement for an undisclosed sum. Defendants contend that Gilman may be "subject to the defenses of lack of reliance, estoppel, waiver, satisfaction, and release," Def. Musser's Mem. Opp. Cl. Cert. at 14, and defenses regarding loss causation, Def. Safeguard's Mem. Opp. Cl. Cert. at 49. Since Gilman admitted to not relying on the market price of Safeguard stock because his broker recommended the purchase, Defendants can also rebut the presumption of Gilman's reliance.

Additionally, Gilman is vulnerable to an attack on a presumption of economic loss. In "fraud-on-the-market cases, the price at which a stock is traded is presumably affected by the fraudulent information, thus injuring every investor who trades in the security." *Newton*, 259 F.3d at 179. However, there is "no support in the case law for presuming economic injury for purposes of class certification in Rule 10b–5 claims absent indication that each plaintiff has suffered an economic loss." *Id.* at 180. "A putative class may presumptively establish economic loss on a common basis only if the evidence adequately demonstrates some loss to each individual plaintiff." *Id.* While we do not make a determination of Plaintiff Gilman's economic loss, we do note that Defendants may have an unique defense regarding loss causation against Gilman. Predictably, Defendants would make this issue and other unique defenses arising from Gilman's previous arbitration settlement a focus of litigation, thereby unduly diverting attention from the class claim and hampering Plaintiff Gilman's ability to vigorously litigate on behalf of the class.

Lastly, Defendants contend that Plaintiff Settos is atypical and inadequate to represent the putative class. Defendants argue that there are individual issues of reliance and materiality because Settos stated in his deposition: "When I purchased the stock I wasn't concerned, aware, cared or anything about or was even aware what Mr. Musser was doing and I wasn't focusing on it." Pl. Settos' Dep. at 66–67. Settos' statements, especially about margin trading, undermine a crucial aspect of Plaintiffs' case which relies on the materiality of Defendant Musser's margin trading, and thereby place him in an antagonistic position from the class. Plaintiffs respond, however, that Settos also stated that "I think if I knew everything that was going on I would have gotten out a long time ago." *Id.* at 84–85. This Court finds that Settos' own conflicting testimony reveals an antagonistic interest to the class as a whole. We are persuaded that Defendants can seriously derail the issues of materiality and reliance based on Settos' deposition, which would adversely impact the interests of the proposed class. Therefore, Plaintiff Settos is also precluded from acting as class representative.

Since no proffered class representative has satisfied Rule 23(a), we need not address the Rule 23(b)(3) requirements. In conclusion, this Court finds that the prerequisites for class certification have not been met and thus, the Motion to Certify This Action as a Class Action is DENIED.

## CONCLUSION

An appropriate Order follows.

## *ORDER*

AND NOW, this 26th day of August, 2003, upon consideration of the Motion to Certify This Action as a Class Action Pursuant to Rule 23 of the Federal Rules of Civil Procedure of Lead Plaintiff Paul R. Adal and other named Plaintiffs (Document No. 41) and Defendants' responses thereto, it is hereby ORDERED that, for the reasons set forth in the

stage of litigation, we do note its existence and its potential and likely adverse effect on the puta-

tive class' interests.

accompanying Memorandum, the Motion is DENIED.